**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

**RICKEY EVANS (#108026)**                                           **CIVIL ACTION NO.**

**VERSUS**                                                                         **18-507-SDD-EWD**

**TIM DELANEY, ET AL.**

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein.  Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on July 28, 2020.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

RICKEY EVANS (#108026)                                     CIVIL ACTION NO.

VERSUS                                                     18-507-SDD-EWD

TIM DELANEY, ET AL.

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the Court is a Motion for Summary Judgment ("Motion"), filed on behalf of Defendants James M. LeBlanc ("LeBlanc"), Darrel Vannoy ("Vannoy"), Tim Delaney ("Delaney"), Stephanie Lamartiniere ("Lamartinere"), and Dr. Randy Lavespere ("Lavespere") (collectively "Movants").  Although there is no opposition memorandum in the docket following the Motion, because the Motion was initially filed incorrectly as a Motion to Dismiss[1] to which Rickey Evans ("Plaintiff") filed an opposition memorandum,[2] Plaintiff's arguments raised in the opposition to the Motion to Dismiss are considered.

It is recommended that the Motion be granted and that Plaintiff's federal claims against Movants for alleged violations of the Eighth Amendment right to be free from cruel and unusual punishment, alleged denial of access to the courts and equal protection, and those arising from the grievance process be dismissed.  It is also recommended that Plaintiff's federal claims against the non-moving defendants John Doe Barkemeyer, John Doe, Jane Doe, J. Helms, Ashley Wilson, J. Dorsey, and Trish Foster (collectively, the "non-moving defendants"),[3] be dismissed on the

---

[1] R. Doc. 13.  The Motion to Dismiss was stricken from the record (R. Doc. 24) on movants' motion (R. Doc. 18).
[2] R. Doc. 14.
[3] The Court ordered disclosure of the full names and addresses for the non-moving defendants under seal on March 9, 2020.  R. Doc. 23.  Counsel for defendants advised that full names and addresses had been provided for Ashley Wilson and Trish Foster, but she was unable to provide addresses for the other non-moving defendants without more information.  R. Doc. 27.  Although Plaintiff requested an extension of time to serve the non-moving defendants (R. Doc. 31), because he fails to state a claim against those defendants, his request is moot.

Court's own motion, and that the Court decline supplemental jurisdiction over any state law claims, resulting in dismissal of this case in its entirety.

I.    **Background**

Plaintiff, an inmate confined at the Louisiana State Penitentiary in Angola, Louisiana, filed this action on April 24, 2018[4] against John Doe Barkemeyer, Delaney, Jane Doe, John Doe, J. Dorsey, J. Helms, Lamartiniere, Lavespere, LeBlanc, Vannoy, Ashley Wilson, and Trish Foster (collectively "Defendants") under 42 U.S.C. § 1983.  Plaintiff alleges his constitutional rights to be free from cruel and unusual punishment, of access to the courts, and to equal protection were violated by the Defendants' actions.[5]  Plaintiff's primary allegation is related to the discontinuance of his Neurontin prescription in February 2016.  Plaintiff seeks declaratory, injunctive, and monetary relief.[6]

Viewing the facts in the verified Complaint most favorably to Plaintiff, the dates pertinent to Plaintiff's claims are as follows:

- March 22, 2010 – Plaintiff sustained an injury to his back, and treatment was refused;[7]

- September 8, 2014 – an MRI was performed and revealed bulging discs and compressed nerves in Plaintiff's back;[8]

- September 1, 2015 – Plaintiff underwent nerve tests;[9]

---

[4] R. Doc. 1. Plaintiff includes April 24, 2018 as the date on the bottom of his original Complaint.  Pursuant to the prison mailbox rule, the complaint is considered filed on this date.  The prison mailbox rule generally applies to the filing of pleadings submitted to courts by Louisiana *pro se* inmates, and provides that an inmate's pleadings are considered to be filed on the date that they are presented to prison officials or placed into the prison mailing system for transmission to the Court, not on the date that they are ultimately received or docketed.  *See Cooper v. Brookshire*, 70 F.3d 377, 379-80 (5th Cir. 1995); *Vicks v. Griffin*, 07-5471, 2008 WL 553186, at *3 (E.D. La. Feb. 28, 2008).
[5] R. Docs. 1 & 4.
[6] R. Doc. 4 p. 18.
[7] R. Doc. 4, p. 6. Plaintiff does not appear to be making a claim regarding the incident that caused his original injury. To the extent he is attempting to assert that claim, it would be prescribed, however, it appears Plaintiff has already brought a suit regarding that incident.  *See* R. Doc. 4, p. 14.
[8] R. Doc. 4, p. 6.
[9] R. Doc. 4, p. 6.

2

- September 4, 2015 – Dr. J. Comeaux at LSP prescribed Neurontin. Plaintiff was supposed to have follow-up appointments but did not; however, his Neurontin prescription continued to be refilled. It was refilled three times at ninety-day intervals;[10]

- February 16, 2016 – Plaintiff was informed that his Neurontin prescription was stopped, declared himself a medical emergency to determine why his Neurontin was stopped, and complained of back and nerve pain as well as "unlawful denial of effective nerve pain medication and access;"[11]

- March 19, 2016[12] – Plaintiff communicated with Lamartiniere regarding "unlawful denial of medical care and treatment;"

- April 13, 2016 – Plaintiff was evaluated for physical therapy;[13]

- April 18, 2016 – Plaintiff was seen at the LSP "doctor's clinic." He requested a new medication for his pain because the Keppra he was prescribed was ineffective and requested to see a neurologist other than Barkemeyer;[14]

- April 19, 2016 – Plaintiff was brought to physical therapy but was unable to perform because of "severe back and leg nerve pain…due simply to the fact that the plaintiff have [sic] no effective nerve-pain medication;[15]

- April 22, 2016 – Plaintiff was taken for x-rays but refused because he felt he could not position himself in the manner required for the x-ray;[16]

---

[10] R. Doc. 4, pp. 6-7.
[11] R. Doc. 4, p. 8.
[12] These communications allegedly lasted through April 25, 2016. (R. Doc. 4, p. 9).
[13] R. Doc. 4, p. 10.
[14] R. Doc. 4, pp. 8-9.
[15] R. Doc. 4, pp. 10-11.
[16] R. Doc. 4, pp. 10-11.

3

- May 26, 2016 – Plaintiff filed ARP No. 2016-1546;[17]

- June 7, 2016 – ARP No. 2016-1546 was rejected because Plaintiff's ARP surpassed the permissible page length;

- June 9, 2016 – Plaintiff received notice of the rejection of ARP No. 2016-1546;[18]

- June 17, 2016 – Plaintiff filed ARP No. 2016-1920;[19]

- July 13, 2016 – ARP No. 2016-1920 was rejected because, again, Plaintiff's ARP surpassed the page length permitted;[20]

- August 18, 2016 – Plaintiff submitted ARP No. 2016-2421, which was backlogged;[21]

- April 11, 2017 – Plaintiff's ARP No. 2016-2421 was denied at the second step;[22]

- May 1, 2017 – Plaintiff received the second step response to ARP No. 2016-2421;[23]

- April 24, 2018 – Plaintiff filed the instant Complaint.[24]

---

[17] R. Doc. 26-3, p. 4. Plaintiff states the "Date of ARP" as May 26, 2016 but, the ARP was not received by the Warden's Office until May 31, 2016. The prison mailbox rule has not been extended to the internal prison Administrative Remedy Procedure. *See Jackson v. Hartley*, No. 10-792, 2011 WL 3444307 at *2 (M.D. La. June 3, 2011) *report adopted by Jackson v. Hartley*, 2011 WL 4729837 (Oct. 5, 2011). Note, in a supplemental report, the Court concluded that the ARP process began on the date the plaintiff wrote the grievance, not based upon the prison mailbox rule, but based on Prison Regulation B-05-005 which provides, in pertinent part that an "inmate commences the [grievance] process by writing a letter to the Warden," and "[t]his letter ***shall be written*** to the warden within 90 days of the alleged event." *Jackson v. Hartley*, 2011 WL 4729802 at *1 (Sept. 2, 2011). La. Admin. Code. Tit. 22, Pt. I, § 325, G. 1. A. i. provides similarly that "[t]he offender commences the process by completing a request for administrative remedy (form B-05-005-ARP-1) or writing a letter to the warden." Thus, based upon the plain language of the Administrative Code, not on the prison mailbox rule, the grievance process commences when a letter is written to the Warden, not when the grievance is received by the Warden. *See Theoshamond Norman v. Johnson*, No. 15-108, 2016 WL 3365188, at n. 3 (M.D. La. May 5, 2016) (noting that it appears that either the date the grievance is written and signed or the date it is received may be used in calculating the limitations period). Regardless of whether the Court uses the dates the grievances were written or the dates they were received by the Warden, Plaintiff's claims are prescribed. To view the facts most favorably to the non-movant, the date the grievances were written and signed will be used.
[18] R. Doc. 26-3, p. 24.
[19] R. Doc. 26-3, p. 27. This ARP also lists the date of incident as "April 19, 2016/ongoing." R. Doc. 26-3, p. 28.
[20] R. Doc. 26-3, p. 26. It appears from the ARP that Plaintiff originally resubmitted his ARP on June 17, 2016, then resubmitted on June 30, 2016. Viewing the facts in the light most favorable to Plaintiff, Plaintiff is given the benefit of having filed on the earlier date of June 17, 2016, especially because ARP No. 2016-1920 is stamped as received by the Warden's office on June 21, 2016.
[21] R. Doc. 26-3, p. 44. This ARP also lists the date of incident as "April 19, 2016/ongoing." *Id.*
[22] R. Doc. 26-3, p. 43. A response had been issued at the first step on December 27, 2016. (*See* R. Doc. 26-3, p. 52).
[23] R. Doc. 4, p. 3.
[24] R. Doc. 1.

4

**II.     Law & Analysis**

    **A. Standard of Review**

Summary judgment is appropriate where there is no genuine disputed issue as to any material fact so that the moving party is entitled to judgment as a matter of law.[25] A party moving for summary judgment must inform the court of the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, that show that there is no such genuine issue of material fact.[26] If the moving party carries its burden of proof under Rule 56, the opposing party must direct the court's attention to specific evidence in the record which demonstrates that the non-moving party can satisfy a reasonable jury that it is entitled to a verdict in its favor.[27] Summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial.[28] In resolving a motion for summary judgment, the court must review the facts and inferences in the light most favorable to the non-moving party, and may not evaluate the credibility of witnesses, weigh the evidence, or resolve material factual disputes.[29]

    **B. Movant's Motion for Summary Judgment Should be Granted as Plaintiff's Claim that His Neurontin was Arbitrarily Discontinued is Prescribed on the Face of the Complaint**

Defendants argue that Plaintiff's claims are prescribed because Plaintiff's claims accrued on February 16, 2016.[30] On February 16, 2016, Plaintiff was informed that his Neurontin

---

[25] Rule 56, Federal Rules of Civil Procedure. *See also, Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).
[26] *Celotex Corp.*, 477 U.S. at 323.
[27] *Anderson*, 477 U.S. at 248.
[28] *Celotex Corp.*, 477 U.S. at 323.
[29] *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).
[30] R. Doc. 26-1, p. 5.

prescription was stopped.[31]  Plaintiff alleges that his Neurontin was arbitrarily discontinued by prison personnel who were not properly qualified to do so, and without Plaintiff being examined or evaluated.[32]  Defendants are correct that the claim that Plaintiff's Neurontin prescription was arbitrarily and improperly discontinued is prescribed on the face of the Complaint.

"There is no federal statute of limitations for actions brought pursuant to 42 U.S.C. § 1983. It is well established that federal courts borrow the forum state's general personal injury limitations period."[33]  In Louisiana, the relevant prescriptive period is one year.[34]  State law also governs tolling, unless the state provisions regarding tolling are inconsistent with federal law.[35]  Though the Louisiana prescriptive period of one year applies to Plaintiff's claims, federal law governs when his claims accrued.[36]  Under federal law, a claim generally accrues "the moment the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured" and that there is a connection between his injury and the defendant's actions.[37]  "A plaintiff need not know that she has a legal cause of action; she need know only the facts that would ultimately support a claim."[38]

According to his own allegations,[39] Plaintiff was aware on February 16, 2016 that his Neurontin was being withheld.  Plaintiff filed the instant complaint on April 24, 2018, over two

---

[31] R. Doc. 4, p. 8.
[32] R. Doc. 4, pp. 14-15.
[33] *Jackson v. Johnson*, 950 F.2d 263, 265 (5th Cir. 1992). *See also, Harris v. Hegmann*, 198 F.3d 153, 156 (5th Cir. 1999) ("Federal courts borrow state statutes of limitations to govern claims brought under section 1983."); *White v. Gusman*, 347 Fed. Appx. 66, 67 (5th Cir. 2009) (unpublished) ("The prescriptive period for a claim brought under § 1983 is provided by the law of the state in which the claim arose.").
[34] La. C.C. art. 3492; *Clifford v. Gibbs*, 298F.3d 328, 332 (5th Cir. 2002).
[35] *Bd. of Regents v. Tomanio*, 446 U.S. 478, 484 (1980).
[36] *Harris v. Hegmann*, 198F.3d 153, 157 (5th Cir. 1999).
[37] *Piotrowski v. City of Houston*, 237 F.3d 567, 576 (5th Cir. 2001) (internal quotation marks and citations omitted).
[38] *Id.* (citing *Harrison v. United States*, 708 F.2d 1023, 1027 (5th Cir. 1983).
[39] Plaintiff's Complaint, as amended, is verified and thus, constitutes competent summary judgment evidence. *See King v. Dogan*, 31 F.3d 344, 346 (5th Cir.1994) (verified complaints may potentially be considered as competent summary judgment evidence to the extent the complaint comports with the affidavit requirements of Rule 56). Rule 56, in turn, requires that affidavits "must be made on personal knowledge, set out facts that would be admissible in evidence," and make the allegations under penalty of perjury. *Id.*; Fed. Rule Civ. P. 56(c)(4).

6

years after he was first advised that his Neurontin prescription had been discontinued.[40] Because Plaintiff was required to exhaust administrative remedies prior to filing suit, however, the filing of his administrative grievances suspended[41] the running of prescription. The Court is required to count against Plaintiff the days that passed both before the relevant grievance was filed and after the conclusion of the administrative proceedings until suit was filed.[42] Based upon Plaintiff's allegations, 99 days[43] passed between February 17, 2016[44] and May 26, 2016, when Plaintiff filed the first ARP 2016-1546, seeking review of the decision to discontinue Neurontin.[45] Another 10 days of untolled time passed[46] between when the decision rejecting ARP 2016-1546 was delivered on June 7, 2016,[47] and the date the next ARP, No. 2016-1920, was filed on June 17, 2016.[48] Another 36 days of untolled time passed between the time Plaintiff received notice of the rejection of ARP No. 2016-1920 on July 13, 2016[49] and when the third ARP, No. 2016-2421, was filed on August 18, 2016.[50] Plaintiff's final ARP was denied at the second step on April 11, 2017, and

---

[40] R. Doc. 1.
[41] When prescription is suspended, the period of suspension is not counted toward the accrual of prescription, but the time that passes when prescription is not suspended counts towards the prescriptive period. *Adams v. Stalder*, 934 So.2d 722 (La. App. 1st Cir. 2006). Suspension of prescription simply causes the clock to stop running, but when the suspension ends, the clock continues to run from where it left off. *Id.*
[42] *Alombro v. Tarver*, No. 15-548, 2017 WL 2350242, at *2 (M.D. La. May 5, 2017); *see also Bailey v. LeBlanc*, No. 14-271, 2015 WL 5072036, at *3 (M.D. La. July 6, 2015).
[43] Grievances are to be filed within 90 days of the date the injury or damage is sustained, (La. R.S. 15:1172(B)(1)) but Plaintiff makes the argument that if an untimely grievance is ultimately accepted by prison officials and decided on the merits, then the defense that the grievance was untimely is waived. R. Doc. 14, p. 9. The Court does not have to answer this question because Plaintiff's complaint is subject to dismissal regardless of whether his grievance was timely filed or if the defense that it was untimely filed was waived.
[44] When calculating dates, the day that triggers the period is excluded. Fed. R. Civ. Proc. 6(a)(1)(A).
[45] R. Doc. 4, p. 3.
[46] La. R.S. 15:1172 states that prescription "shall be suspended upon the filing of such complaint or grievance and shall continue to be suspended until the final agency decision is delivered." However, 22 La. A.D.C. Pt. I, § 325 states that a "rejected request is not appealable to the second step." Per the Louisiana Civil Code, "[l]aws on the same subject matter must be interpreted in reference to each other." La. Civ. Code art. 13. Interpreting these two laws in together, when an ARP has been rejected at the first step, that rejection is the final agency decision, as the ARP cannot be appealed to any other step. Thus, upon receipt of the rejection of the ARP or grievance, prescription again begins to run, until another ARP is filed.
[47] R. Doc. 4, p. 3.
[48] R. Doc. 4, p. 3.
[49] R. Doc. 4, p. 3.
[50] R. Doc. 4, p. 3.

7

Plaintiff received notice of the decision on May 1, 2017.[51] Between May 2, 2017 and the date Plaintiff filed the Complaint on April 24, 2018, another 357 days passed.

Plaintiff's claims regarding the arbitrary discontinuance of his Neurontin prescription are prescribed on their face, as 502 days of untolled time elapsed from the date Plaintiff's cause of action accrued to when he filed his Complaint. To overcome prescription, Plaintiff argues that the continuous tort doctrine saves his claims.[52] While the continuous denial of medical care may constitute a continuing tort,[53] the sole act of discontinuing Plaintiff's Neurontin prescription does not constitute a continuing tort, as this was a single action followed by continuing consequences.[54] Further, "each instance of potentially deliberate indifference ceased" when Plaintiff received medical attention.[55]

Even if Plaintiff is given the benefit of a continuing tort from the time his Neurontin was discontinued until he received medical treatment on April 18, 2016,[56] at which time any potential act of deliberate indifference would have ceased, and presuming the prescriptive period was suspended from the date of submitting his first ARP through receipt of the final agency decision on his third-filed ARP,[57] Plaintiff's claim regarding the alleged arbitrary discontinuance of his Neurontin is still prescribed. 36 days passed from April 19, 2016 to when the first grievance was filed on May 26, 2016, and another 357 days passed between receipt of the final agency decision on May 1, 2017 and the filing of this suit, for a total of 393 days.

---

[51] R. Doc. 4, p. 3.
[52] R. Doc. 14, pp. 4-5.
[53] *See Smith v. Kaufman County Sheriff's Office*, No. 10-703, 2011 WL 7547621, at *22-24 (N.D. Tex. Dec. 14, 2011).
[54] *McGregor v. Louisiana State University*, 3 F.3d 850, 866-67 (5th Cir. 1993) ("only continuous unlawful acts can form the basis of a continuing violation.").
[55] *Nottingham v. Richardson*, 499 Fed.Appx. 368, 375 (5th Cir. 2012).
[56] R. Doc. 4, p. 8.
[57] As discussed in footnote 46, *supra*, upon receipt of the rejection of the ARP or grievance, Louisiana law indicates that prescription again begins to run until another ARP is filed. However, even if this "*Eerie*" guess" is incorrect and presuming that prescription does not again begin to run, Plaintiff's claim is still prescribed.

### C. Plaintiff's Other Claims are Subject to Dismissal on the Court's Own Motion

As detailed below, Plaintiff's other federal claims are subject to dismissal on the merits notwithstanding that Movants only raised prescription as a basis for summary judgment.[58]

### 1. Plaintiff has Otherwise Failed to State a Claim of Deliberate Medical Indifference

To the extent Plaintiff complains of deliberate medical indifference related to the ongoing failure to provide adequate pain relief following discontinuance of his Neurontin prescription, that claim is subject to dismissal on the merits. To establish a claim of deliberate medical indifference, an inmate plaintiff must demonstrate that appropriate medical care has been denied and that the denial amounted to "subjective recklessness as used in the criminal law."[59] *Farmer* lays out an objective prong and a subjective prong.[60] The objective prong requires a plaintiff to demonstrate that "the deprivation alleged [was], objectively, 'sufficiently serious.'"[61] Under the subjective prong, a plaintiff must show that prison officials acted with a "sufficiently culpable state of mind."[62] The deliberate indifference standard sets a very high bar: the plaintiff must be able to establish that the defendants "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs."[63] Whether the plaintiff has received the treatment or accommodation that he believes he should have is not sufficient to state a claim for deliberate medical indifference absent exceptional circumstances.[64] Nor do negligence, neglect, unsuccessful

---

[58] *Washington v. Copiah County Board of Supervisor*, 740 Fed.Appx. 424, 426 (5th Cir. 2018) citing Fed. R. Civ. P. 56(f)(2) ("After giving notice and a reasonable time to respond, the court may:…grant the motion on grounds not raised by a party."). This report and recommendation provides notice and a reasonable opportunity to respond. *See Treadway v. Wilkinson,* 2008 WL 4224817, n.3, (W.D. La. June 10, 2008).
[59] *Farmer v. Brennan*, 511 U.S. 825, 839–30 (1994).
[60] *Id*. at 837.
[61] *Id.* at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)).
[62] *Id.*
[63] *Domino v. Texas Dept. of Criminal Justice*, 239 F.3d 752, 756 (5th Cir.2001), *quoting Estelle v. Gamble*, *supra.*
[64] *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (citations omitted).

treatment, or even medical malpractice, give rise to a § 1983 cause of action.[65] Further, a mere delay in providing medical treatment does not amount to a constitutional violation without both deliberate indifference and a resulting substantial harm.[66]

Plaintiff alleges that he suffers from ongoing, severe back and leg pain that resulted from a "beating" that occurred in 2010.[67] Plaintiff has been treated by doctors outside of LSP as well as LSP physicians, including treatment at LSP's Pain Management Clinic, where Plaintiff contends he was "thoroughly examined and evaluated."[68] In September 2015, Plaintiff was prescribed Neurontin, "a non-narcotic oral pain reliver" and was scheduled for a follow-up appointment with LSP's neurologist, though he was not brought to his follow-up appointment.[69] Notwithstanding the missed appointment, Plaintiff's Neurontin prescription was renewed and he continued to receive his medication, which Plaintiff alleges "did relieve some of [his] nerve pain."[70] Plaintiff's issues arise with treatment rendered post-February 2016.[71] However, as discussed below, Plaintiff was offered (and received) treatment for his complaints, foreclosing any potential claim for deliberate indifference.

On April 13, 2016, Plaintiff attended physical therapy, where he was interviewed and evaluated for physical therapy for his complaints regarding back pain.[72] Plaintiff was seen at an LSP "doctor's clinic" on April 18, 2016.[73] At this appointment, Plaintiff complained that the

---

[65] *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir.1991).
[66] *Carlucci v. Chapa*, 884 F.3d 534, 538 (5th Cir. 2018), citing *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993).
[67] R. Doc. 4, p. 6.
[68] R. Doc. 4, p. 6.
[69] R. Doc. 4, pp. 6-7.
[70] R. Doc. 4, p. 7.
[71] R. Doc. 4, p. 8.
[72] R. Doc. 4, p. 9.
[73] R. Doc. 4, p. 8.

10

"Keppra…medication," had no effect on his nerve pain, and Plaintiff requested "effective nerve-pain specific medication." Plaintiff's request was not fulfilled.[74]

On April 19, 2016, Plaintiff was again taken to physical therapy; though Plaintiff alleges he was unable to perform the exercises at physical therapy because he was not being given an "effective" pain medication.[75] On April 22, 2016, Plaintiff was taken to LSP's hospital for x-rays, but Plaintiff refused to cooperate for the x-rays to be completed.[76] On June 2, 2016, Plaintiff attended an appointment with LSP neurologist Barkemeyer.[77] Plaintiff alleges that Barkemeyer had "no intention on properly treating the plaintiff's back and nerve condition."[78] Since this appointment, Plaintiff has refused appointments with Barkemeyer.[79]

Per Plaintiff's own allegations, he has been offered medical care and treatment from various doctors and therapists at LSP, but he disagrees with the medical care that has been rendered, finds it inadequate, and often refuses medical treatment. Plaintiff primary complaint is that he is not being treated with the medicine of his choice, Neurontin, but Plaintiff does not have any right to medicine of his choice.[80] Further, by his own allegations, Plaintiff was provided treatment for his complaints, including Keppra, physical therapy, and examinations including x-rays, which Plaintiff refused. Because Plaintiff does not have a right to his choice of medicine and

---

[74] R. Doc. 4, p. 9.
[75] R. Doc. 4, p. 10.
[76] R. Doc. 4, pp. 10-11.
[77] R. Doc. 4, pp. 11-12.
[78] R. Doc. 4, p. 12.
[79] R. Doc. 4, p. 13.
[80] *Henderson v. Tanner*, No. 15-804, 2019 WL 885914, at *5 (M.D. La. Feb. 22, 2019) ("[t]he Eighth Amendment does not guarantee an inmate his choice of treatment or the right to dictate the type or dosage of medication prescribed to him. In fact, the Fifth Circuit has held that d]eliberate indifference is especially hard to show when the inmate was provided with ongoing medical treatment.") (internal quotation marks and citations omitted).

because he was otherwise offered treatment, Plaintiff has failed to state a claim for deliberate indifference to a serious medical need.[81]

### 2. Plaintiff has Not Stated a Claim for Denial of Access to the Courts

Plaintiff alleges in a conclusory fashion that his "First Amendment Rights to access to the Courts were violated on three (3) different occasions…during the course of the administrative process by the deliberate, intentional, willful, and retaliatory denial and delay of plaintiff's administrative complaint."[82]

Inmates have a fundamental constitutional right of access to the courts.[83] The right of access to the courts, however, "guarantees no particular methodology but rather the conferral of a capability—the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts."[84] In order to prevail on a claim of interference with access to the courts, an inmate claimant must be able to show that she has suffered some cognizable legal prejudice or detriment as a result of the defendant's actions.[85] In addition, the plaintiff must be able to show that the defendant had an intent to interfere with the plaintiff's right to submit pleadings to the courts or was otherwise deliberately indifferent to the plaintiff's wish to do so.[86] An inmate's right to seek access to the courts is limited to the making of non-frivolous claims

---

[81] *Fails v. DeShields*, 349 Fed.App'x. 973, 976 (5th Cir. 2009) ("Deliberate indifference is especially hard to show when the inmate was provided with ongoing medical treatment.").

[82] R. Doc. 4, p. 11. Plaintiff also alleges in a conclusory fashion that the interference with access to the courts and alleged denial of medical treatment is in retaliation. R. Doc. 4, p. 14. This conclusory assertion is insufficient to demonstrate retaliation, and thus, this claim is not addressed further. *See White v. LaMartiniere*, No. 11-215, 2012 WL 528153 (M.D. La. Jan. 24, 2012) *adopted by White v. LaMartiniere*, No. 11-215, 2012 WL 528150 (M.D. La. Feb. 16, 2012) (dismissing an action as frivolous because it stated mere conclusory allegations of retaliation). Moreover, to the extent Plaintiff complains of retaliation that occurred in 2010, such claims are prescribed.

[83] *Lewis v. Casey*, 518 U.S. 343, 351 (1996).

[84] *Lewis,* 518 U.S. at 356.

[85] *Eason v. Thaler,* 73 F.3d 1322, 1328 (5th Cir. 1996).

[86] *See Herrington v. Martin,* No. 09-785, 2009 WL 5178340, *2 (W.D. La., Dec. 23, 2009) (recognizing that "[a]n 'access to courts' claim is actionable only if the deprivation stemmed from intentional conduct on the part of the defendant; 'access to courts' claims premised on a defendant's mere negligence or inadvertence are not cognizable under § 1983").

involving the assertion of legitimate constitutional rights.[87] Because the right to access to the courts "rest[s] on the recognition that the right is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court,"[88] "the underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint."[89] "While the precise contours of a prisoner's right of access to the courts remain somewhat obscure, the United States Supreme Court has not extended this right to encompass more than the ability of an inmate to prepare and transmit a necessary legal document to a court."[90]

Plaintiff has wholly failed to describe the underlying cause of action he attempted to bring that was allegedly thwarted by Defendants. Moreover, Plaintiff's claim regarding access to courts revolves solely around his dissatisfaction with the administrative remedy process, but Plaintiff has no right to have his administrative proceedings properly investigated, handled, or favorably resolved.[91] Therefore, Plaintiff cannot state a claim for denial of access to the courts arising from his dissatisfaction with the administrative remedy process.[92] As stated by the United States Court of Appeal for the Fifth Circuit in *Geiger v. Jowers*:[93]

> Insofar as [the plaintiff] seeks relief regarding an alleged violation of his due process rights resulting from the prison grievance procedures, the district court did not err in dismissing his claim as frivolous…[The plaintiff] does not have a federally protected liberty interest in having these grievances resolved to his satisfaction. As he relies on legally nonexistent interest, any alleged due process violation arising from the alleged failure to investigate his grievances is indisputably meritless.[94]

---

[87] *Johnson v. Rodriguez,* 110 F.3d 299, 311 (5th Cir. 1997).
[88] *Christopher v. Harbury,* 536 U.S. 403, 415 (2002),
[89] *Lewis,* 518 U.S. at 356.
[90] *Brewer v. Wilkinson,* 3 F.3d 816, 821 (5th Cir. 1993).
[91] *Mahogany v. Miller,* 252 Fed.Appx. 593, 595 (5th Cir. 2007).
[92] *Id.* (holding claim that failure to process grievance denied access to the courts was frivolous).
[93] 404 F.3d 371 (5th Cir. 2005) (in the context of the handling of an administrative grievance).
[94] *Id*. at 373-74.

13

Accordingly, Plaintiff has not stated a claim for denial of access to the courts by virtue of the alleged mishandling of his grievances.

> **3. Plaintiff's Claims against John Doe Barkemeyer, John Doe, Jane Doe, J. Helms, Ashley Wilson, J. Dorsey, and Trish Foster should be Dismissed on the Court's Own Motion**

The above-mentioned Defendants are not movants in the instant Motion. However, the Court possesses the inherent authority to *sua sponte* dismiss a party or expand upon the grounds for dismissal urged by movants as long as the adverse parties receive notice and a chance to respond.[95] This Report and Recommendation provides adequate notice to Plaintiff.[96] Because the non-movants are similarly situated to the moving Defendants, it is appropriate to dismiss the non-movants for the same reasons.[97] Plaintiff's claims against all Defendants arise from medical treatment or lack thereof,[98] and the Defendants' response to Plaintiff's complaints on these issues, which are subject to dismissal for the reasons explained above.

To the extent Plaintiff has attempted to make an equal protection claim against Barkemeyer, this claim fails also subject to dismissal *sua sponte*.[99] Plaintiff alleges that Barkemeyer prescribes Neurontin to white inmates "a disproportionate number of times more often than to black inmates."[100] To establish a claim under the Equal Protection Clause, a plaintiff "must allege and prove that he received treatment different from that received by similarly situated

---

[95] *McCullough v. Lynaugh*, 835 F.2d 1126, 1127 (5th Cir. 1988) (citing *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630-31 (1962)); *see also Spann v. Woods*, 66 F.3d 322 (5th Cir. 1995) (unpubl.) (district court *sua sponte* dismissed claims under 12(b)(6) although the defendants never filed a motion to dismiss, nor did they plead failure to state a claim in their answer).
[96] *McCoy v. Wade*, No. 06-2292, 2007 WL 1098738, *1 (W.D. La. Mar. 12, 2007) (the report and recommendation itself provides adequate notice to the parties).
[97] *See Lewis v. Lynn*, 236 F.3d 766, 768 (5th Cir. 2001) (citations omitted).
[98] As noted above, Plaintiff's claims against Foster for denial of access to the courts and handling of grievances are subject to dismissal pursuant to 28 U.S.C. §§ 1915(e) and 1915A. To the extent Plaintiff attempts to make any claims against Foster for any of the acts of medical treatment or lack thereof, those claims are also subject to dismissal as prescribed or alternatively, on the merits.
[99] Plaintiff's claims against Barkemeyer also appear to be unexhausted, as the pertinent ARP for this litigation does not contain any of the relevant facts against Barkemeyer. *See* R. Doc. 26-3, pp. 44-50.
[100] R. Doc. 4, p. 13.

individuals and that the unequal treatment stemmed from a discriminatory intent."[101]  In the instant matter, Plaintiff has proffered only vague and conclusory allegations based solely on his personal, subjective belief that he and his medical needs are similarly situated to white inmates.  Plaintiff alleges in a conclusory fashion that white inmates are prescribed Neurontin regardless of whether their medical records indicate a need, while black inmates are not prescribed Neurontin when their medical records indicate the need.[102]  Plaintiff does not provide any details regarding the medical histories of any of these other inmates, and likely is unaware of their medical histories and diagnoses.[103]  These conclusory statements are insufficient, and Plaintiff has not alleged facts to indicate that he is similarly situated to these other inmates.  Plaintiff's conclusory allegations, largely including his subjective beliefs regarding who should be prescribed Neurontin, are insufficient to state a claim for equal protection.[104]

### D.  The Exercise of Supplemental Jurisdiction Should be Declined

To the extent that Plaintiff's allegations may invoke the supplemental jurisdiction of this court over potential state law claims, a district court may decline the exercise of supplemental jurisdiction if a plaintiff's state law claims raise novel or complex issues of state law, if the claims substantially predominate over the claims over which the district court has original jurisdiction, if the district court has dismissed all claims over which it had original jurisdiction, or for other

---

[101] *Gross v. Normand*, 576 Fed.Appx. 318, 321 (5th Cir. 2014) *citing Taylor v. Johnson*, 257 F.3d 470, 473 (5th Cir. 2001).
[102] R. Doc. 4, p. 13.
[103] Plaintiff does not provide any foundation for how he is aware of what prescriptions certain unidentified inmates may or may not need and does not provide any specific facts regarding these inmates or these medical conditions. Rather, he is voicing his lay opinion that the white prisoners who are prescribed Neurontin do not need this particular medication to treat their medical conditions.
[104] *Ellis v. Crowe*, 2010 WL 724158 (E.D. La. Feb. 19, 2010) (Conclusory allegations of an inmate's subjective belief that he is similarly situated to other inmates is insufficient to state a claim for a violation of his right to equal protection.); *Withers v. Roger Soloway, M.D.*, 2018 WL 8801417, at *11 (S.D. Tex. Aug. 27, 2018).

compelling reasons.[105]  In the instant case, having recommended that Plaintiff's federal claims be dismissed, it is also recommended that the Court decline the exercise of supplemental jurisdiction.

## RECOMMENDATION

**IT IS RECOMMENDED** that the Motion for Summary Judgment,[106] filed on behalf of James M. LeBlanc, Darrel Vannoy, Tim Delaney Stephanie Lamartinere, and Dr. Randy Lavespere be **GRANTED**, that Plaintiff's federal claims against these defendants be **DISMISSED, WITH PREJUDICE**.

**IT IS FURTHER RECOMMENDED** that Plaintiff's federal claims against the non-moving Defendants John Doe Barkemeyer, John Doe, Jane Doe, J. Helms, Ashley Wilson, J. Dorsey, and Trish Foster be **DISMISSED, WITH PREJUDICE** *sua sponte*, resulting in resolution of all federal claims.

If the recommendations are adopted as to dismissal of Plaintiff's federal claims, **IT IS FURTHER RECOMMENDED** that this Court decline the exercise of supplemental jurisdiction be declined over any state law claims, that all pending motions[107] be **TERMINATED**, and this case be **CLOSED**.

Signed in Baton Rouge, Louisiana, on July 28, 2020.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

---

[105] 28 U.S.C. § 1367.
[106] R. Doc. 26.
[107] R. Docs. 15 & 31.